# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SCOTT TUSTIN** : | |
| : | **CIVIL ACTION NO. 22-3074** |
| **v.** : | |
| : | |
| **CHAPMAN CHEVROLET, LLC, et al.** : | |

**McHUGH, J.**                                                                                    **September 15, 2022**

**MEMORANDUM**

Plaintiff Scott Tustin petitions the Court to vacate an arbitration award against him after the arbitrator rejected his interpretation of the employment contract he had with Respondents Chapman Auto Group and Chapman Chevrolet.[1] Petitioner's argument largely disputes the arbitrator resolving the litigation by means of summary judgment, contending instead that there was evidence in the record creating materials issue of fact. But the arbitrator's opinion clearly considered what limited evidence might support Petitioner's preferred interpretation and concluded that it was plainly contradicted by Petitioner's own conduct, statements, and testimony. I will therefore deny Petitioner's motion to vacate the arbitration decision.

## I.     Legal Standard

Petitioner moves for vacation pursuant to the grounds set forth in 9 U.S.C. § 10(a)(3) and 10(a)(4). The FAA allows district courts to vacate arbitration awards "only under exceedingly narrow circumstances." *Cent. Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 557 (3d Cir. 2009) (quoting *Dluhos v. Strasberg,* 321 F.3d 365, 370 (3d Cir. 2003)). "[V]acatur pursuant to section

---

[1] The arbitrator treated the Respondents as undifferentiated for the purposes of the action and neither party has indicated that was in error, so I will do so here as well.

10(a)(3) is warranted only where the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Id.*

"A party seeking relief under [section 10(a)(4)] bears a heavy burden.  It is not enough to show that the arbitrator committed an error—or even a serious error.  Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (cleaned up).  "In other words, the task of an arbitrator is to interpret and enforce a contract.  When he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 220 (3d Cir. 2012), *as amended* (Apr. 4, 2012), *aff'd,* 569 U.S. 564 (2013).  "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.*, 559 U.S. 662, 671 (2010) (cleaned up).

The arbitration agreement here provided that dispositive motions were to be governed by the standards of the Federal Rules of Civil Procedure.  Dispute Resolution Plan § H, Ex. B to Pet., ECF 1-4.  The well-established standard for summary judgment is set forth in Fed. R. Civ. P. 56(a), as described by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009).

## II. Discussion

The substantive dispute in this litigation was over the amount of Petitioner's commission bonus as a salesperson for Chapman. Arbitration Decision at 1, Ex. A to Pet., ECF 1-3. As a commission, Petitioner received 20% of the net profits generated by his department.[2] *Id.* at 1-2. His sales partner, James Piccoli, who worked at the dealership from July 2009 until July 2018, also received 20% of the department's net profits. *Id.* Petitioner contends that the commissions weren't distributed on a per employee basis but instead departmentally such that after his sales partner's retirement in July 2018, he would be entitled to 40% of the department's net profits. *Id.* at 2.

Petitioner's evidence in favor of this interpretation consists of two items. First, Petitioner presented pleadings and presumably testimony that, at the original meeting in 2008 where Petitioner and his partner were first hired, the bonus was discussed departmentally, with Petitioner and his partner to split the lump percentage 50/50. *Id.* Second, Petitioner submitted an email in anticipation of his partner's retirement where he proposed hiring his son Shamus Tustin to replace Piccoli and proposed a new compensation structure. Petitioner's email describes the prior compensation structure as "Fleet Department Splits 40% Between Scott Tustin and Jim Piccoli," and proposed a new but similar structure of "Fleet Department 40%, Scott Tustin all profits including Avis, Shamus Tustin 20% less Avis." *Id.* at 3. Petitioner followed up with Respondents' CFO after he hadn't "heard anything else concerning the business plan," and Respondents' CFO responded by emailing, "We are a go with your business plan. You are going to bring [S]hamus into your department." *Id.* at 4. The arbitrator sets all this evidence out in detail. Petitioner does not indicate that any putative live testimony would differ substantially from the evidence

---

[2] This figure was initially 17.5%, and Petitioner and his partner initially split 35% of the department's net profits.

3

considered on summary judgment, thus it is difficult to see how "the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing" such that vacatur is appropriate under § 10(a)(3). *Id.* at 557. Ultimately this is not a case where the arbitrator "refus[ed] to hear evidence pertinent and material to the controversy," but one where the Petitioner disputes *how* the arbitrator construed the evidence, which does not qualify under § 10(a)(3)'s narrow standard for relief.

Further, regarding Petitioner's substantive attack under § 10(a)(4), as the arbitrator thoroughly and competently explains, the evidence on which Petitioner relies is overwhelmingly contradicted by the conduct, statements, and testimony of the parties, including Petitioner. The overall record indicates that the agreements between the parties assigned the commission credit individually rather than on a departmental basis. This evidence included signed "Pay Plans" from 2009, 2011, and 2013 that assigned the commissions individually and provided Respondents with discretion to modify the terms of compensation, *id.* at 3, testimony from Petitioner that his 2018 "business plan" was never enacted or approved, *id.* at 4,[3] a course of conduct by Petitioner suggesting acquiescence to his continued 20% commission following Piccoli's retirement, *id.* at 5, and an email from Petitioner in May 2019, nearly a year after Piccoli's retirement, requesting a 30% commission—not on the basis of any prior agreement, but simply on the basis that he was "now doing this myself," *id.* I conclude that the arbitrator's good faith reading of the record as sustaining Chapman's interpretation of the agreement does not constitute error, let alone the sort of error amenable to challenge under § 10(a)(4).

---

[3] And as Respondents point out, even that business plan still only granted Petitioner a 20% commission. Resp. at 4.

To the extent that Petitioner challenges the arbitrator's application of the Rule 56 standard under § 10(a)(4), I find no basis on which to vacate the award. The arbitrator's consideration of the record is in accord with Pennsylvania contract law, which permits a court to interpret unambiguous agreements as a matter of law. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). Although Petitioner points to several pieces of evidence that might support his preferred interpretation, the inferences he seeks to draw are fatally undermined by a far more substantial and compelling countervailing record. At the very least, the arbitrator's determination is well within *Matsushita*'s holding that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." 475 U.S. at 587. And even if I were to conclude that the arbitrator erred in deciding the case on summary judgement, he did not "stray[] from interpretation and application of the agreement" to "dispense[] his own brand of industrial justice." *Stolt-Nielsen S.A.*, 559 U.S. at 671.

### III.   Conclusion

Petitioner's motion will therefore be denied. An appropriate order follows.

       /s/ Gerald Austin McHugh
United States District Judge